Williams, Judge,
delivered the opinion of the court:
The plaintiff, a New York corporation, and the United States entered into two written contracts, on or about March 28, 1919, under the terms of which the plaintiff agreed to manufacture and deliver to the United States various Browning rifles, parts, and accessories. The plaintiff in the manufacture of the various articles covered in the contract purchased from the United States and used various materials which it agreed to pay for upon the final completion of the contracts. Pending such payment, and as security for the same, plaintiff deposited $68,829.31 with the United States. Upon completion of the contracts an inventory was made •of the materials used by the plaintiff belonging to the United States, and it was agreed that the amount due from the plaintiff to the United States therefor was $24,019.13, leaving .a balance of $44,809.58 of the amount deposited due the plaintiff.
The defendant admits that the balance of the deposit has never been refunded to the plaintiff and states that the amount is withheld because the plaintiff at the time of the filing of this suit was, and still is, justly indebted to the United States in the sum of $112,237.98, growing out of other transactions set forth in the defendant’s second amended answer and counterclaim, as follows:
1.For an award, alleged to be illegal, made by defendant to plaintiff in reimbursement for increased cost of manufacture due to increased wages_$56,501. 13
2. For shortage in delivery of war materials_ 15, 866. 77
3. For overpayment on airplane radiators_ 600.00
*406 4. For shortage in delivery of belts- $1,206.40
5. For overpayment by defendant to plaintiff of specified overhead and administrative expenses- 34,814.13
6. For failure to return to defendant paints and varnishes belonging to it_ 3,249.55
The plaintiff admits the validity of counterclaim no. 2, in the sum of $15,866.77. The defendant in the brief abandons counterclaims nos. 4 and 6, leaving only nos. 1, 3, and 5 for consideration by the court.
Counterclaim No. 1, $56,501.13. — The Secretary of War, on August 2, 1920, acting under the authority conferred on him by the act of March 2, 1919 (40 Stat. 1272), commonly known as the “Dent Act”, made an award to the plaintiff in the sum of $56,501.13 to reimburse it for excess labor costs incurred in the performance of certain contracts with the United States for war materials, which award was subsequently paid to the plaintiff in full. It is contended that the Secretary of War was without authority to make the award for the reason that no agreement, express or implied, within the meaning of the Dent Act, was entered into prior to November 12, 1918, obligating the United States to compensate the plaintiff for such excess costs.
The essential facts in respect to this counterclaim are set forth in findings III, IV, Y, VI, and VII. The Secretary of War having determined that the procurement of necessary supplies for the prosecution of the war would be more certain if he was vested with authority to adjust and settle labor difficulties in plants where such materials were being produced called a conference of the manufacturers of Connecticut having contracts with the Government for war materials. At this conference the Secretary of War, through duly authorized representatives, made a statement explaining his position in this matter and urged upon the manufacturers represented at the conference the importance of their consenting to the arrangement desired, by the modification of existing contracts and the inclusion of such provisions in future contracts. It was stated by the Secretary that compensatory adjustment would be made in case increased labor costs were incurred by manufacturers as a result of the settlement of such labor difficulties by him. Representatives *407 of the plaintiff attended the conference. A few days thereafter one of the representatives of the Secretary who had attended this general conference had a conference with certain officials of the plaintiff at which time he again explained the provision the Secretary desired to have incorporated in existing and in future contracts, and urged the plaintiff to-consent thereto. It was under these circumstances that the letters of November 20, 1917, and November 21, 1917, were-exchanged between the plaintiff and the Secretary of War.
We think the letters clearly constituted an informal agreement, whereby plaintiff agreed that the Secretary of War-should arbitrate and settle any and all labor disputes arising between the plaintiff and its employees in the performance of war contracts in- such manner as he might deem proper, and the Secretary of War agreed on his part to reimburse plaintiff for increased labor costs incurred by it as a result of such settlement by him. The agreement undoubtedly had reference to both existing and future contracts and fixed the plaintiff’s right to reimbursement for-increased labor costs resulting from the settlement, by the Secretary, of labor difficulties in the performance of any contract for war materials without regard to whether the so-called “labor clause” appeared in the contract or not. E. W. Bliss Company v. United States, 275 U. S. 509. In accordance with the terms of the informal agreement the plaintiff submitted the demands of its employees for increased wages, etc,, to the Secretary of War. The Secretary, through his duly authorized representative, Major Gitchell, promptly investigated the matter and made an award on November 1, 1918, effective from that date, by the terms of which wages of the employees were increased, and hours of labor, overtime, and extra-time work were fixed. The-plaintiff complied with the terms of the award, and as a result thereof incurred excess costs in the amount of $56,-501.13 in the further performance of the three contracts involved. The supplemental award made by Major Gitchell on November 20, 1918, in which he directed as a part of the adjustment made by him in the award of November 1, 1918,. that a fair and just addition to the contract price should be • *408 made to the extent of the actual increased cost was superfluous. The plaintiff’s right to compensation for the increased labor costs by reason of the award of November 1, 1918, was fixed by the terms of the informal agreement, and was in no way dependent on the inclusion of that provision in the award itself.
Upon the completion of the work on the contracts involved, the plaintiff submitted a claim to the Secretary of War, in the amount of $56,501.13, on account of increased labor costs incurred by it as a result of the award of November 1, 1918. The claim was submitted to the Claims Board of the Bridgeport District, which allowed it in full, subject to approval of the Claims Board of the War Department. The Board of Contract Adjustment heard the claim upon the merits, and on June 9,1920, made its findings holding that the plaintiff was entitled to reimbursement in the amount claimed. The Secretary of War, acting through the War Department Claims Board, approved the findings of the Board of Contract Adjustments, and on August 2, 1920, made an award of $56,501.13, which was accepted by the plaintiff, and, as stated, was in due course paid. There being an informal agreement between the plaintiff and the •Secretary of War, entered into prior to November 12, 1918, that the plaintiff should be reimbursed for excess labor costs ■occasioned by the settlement of labor disputes between the plaintiff and its employees by him, he had jurisdiction under the act of March 2, 1919, to consider and adjust the claim in question and to make the award on the basis of such agreement.
Counterclaim No. 3, $600.00. — This counterclaim is based ■on the contention that at the time plaintiff delivered 100 airplane radiators to the defendant, under Procurement Order No. 720746 at a unit price of $45 each, the plaintiff had agreed under another contract subsisting at the time to furnish such radiators at a unit price of $39 each, and that it was the duty of the defendant’s officers to order such radiators .under the contract entailing the least expenditure by the defendant. The facts relating to this transaction are set forth in detail in finding IX, and need not be repeated here. *409 It is sufficient, we think, to point out that the contract under which the defendant requested and accepted shipment of the 100 radiators provided for payment at a unit price of $45 each. Payment was made in strict accordance with the terms of the contract, in respect to which there is no allegation or proof of fraud. In these circumstances the plaintiff was entitled to payment of the full contract price of $45.00 each for the radiators furnished and delivered. This item of the counterclaim is therefore without merit.
Ooimterclaim No. 5, $3^811^.13. — This counterclaim is based on the alleged excessive payments to the plaintiff of factory overhead expenses in connection with the performance of contract G-l025-415 Tw., a cost-plus contract, and contract G-1030-411 Tw., which became a cost-plus contract upon its cancellation after the close of the war. Included in such factory overhead expenses are two items aggregating $1,249.17 for expenses incurred by plaintiff in the development and perfection of bombs covered in the two contracts. These expenses were all incurred prior to the entrance of the United States into the World War, and prior to making the contracts involved. While the United States was interested in the experimental work of the plaintiff in developing the bombs and the work was done ‘under the observation of defendant’s officials, there is no proof that the United States agreed at the time the experimental work was being performed to reimburse the plaintiff for any part of the costs thereof. Neither is there any provision in either of the contracts authorizing the inclusion of such costs in the factory overhead expenses applicable to the manufacture of the bombs covered in the contracts. These expenses did not constitute a pro rata share of factory overhead expenses applicable and necessary in connection with the manufacture of the articles contracted for and were improperly allowed and paid to plaintiff.
The United States is entitled to a credit of $50.00 because of the overpayment in that amount to plaintiff for the cost of the die referred to in finding XII. There is no satisfactory proof that the other items comprising this counterclaim were not properly allowable as factory overhead expenses in the performance of the contracts involved.
*410 Upon the whole case the plaintiff is entitled to recover $44,809.58 on the facts stated in the petition. The defendant is entitled to recover $15,866.77 on counterclaim No. 2, and $7,299.17 on counterclaim No. 5.
Judgment is therefore awarded the plaintiff against the United States for $21,643.64. It is so ordered.
Whalet, Judge; LittletoN, Judge; Green, Judge; and Booth, Chief Justice, concur.